**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| CHOICE HOTELS INTERNATIONAL, INC., | * |
| Plaintiff, | * |
| v. | *   Case No.: GJH-18-3364 |
| TK HOSPITALITY GROUP, LLC, *et al.*, | * |
| Defendants. | * |

## MEMORANDUM OPINION

Plaintiff Choice Hotels International, Inc. brought this action against Defendants TK Hospitality Group, LLC ("TK"), BRSV, LLC ("BRSV"), Rakash Patel ("R. Patel"), Brian Dequincey Newman, Thakorbhai N. Patel ("T. Patel"), and Brandon Riddick-Seals to confess judgment based on Defendants' alleged default on a promissory note. ECF No. 1. After this Court entered judgment by confession, Defendants filed a Motion to Vacate Judgment by Confession and Compel Arbitration, ECF No. 11, and Defendants' counsel filed a Motion to Withdraw Appearance, ECF No. 18. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendants' Motion to Vacate Judgment by Confession and Compel Arbitration is granted and Defendants' counsel's Motion to Withdraw Appearance is granted.

**I.    BACKGROUND**

On September 30, 2015, Plaintiff entered into a Franchise Agreement with TK, pursuant to which TK consented to construct, open, and operate a hotel in Atlanta, Georgia ("Hotel") using Plaintiff's brand marks. ECF No. 1-3. The Franchise Agreement granted Plaintiff the right to terminate the agreement under certain circumstances, including if TK materially breached,

1

breached and failed to cure within thirty days, or failed to open the Hotel "in accordance with th[e] Agreement." *Id.* at 13.[1] The Franchise Agreement also provided, however, that if either party was "delayed or prevented from the performance of any act required under this Agreement by reason of," among other things, "inability to procure materials," "restrictive governmental laws or regulations," or "any other cause without the party's fault and beyond the party's control, the performance of that act w[ould] be extended for a period equivalent to the period of the delay." *Id.* at 22–23.

Any dispute arising under the Franchise Agreement or any "related agreements" was subject to arbitration:

> Except for our claims against you for indemnification or actions seeking to enjoin you from using any of our Intellectual Property …, any controversy or claim arising out of or relating to this Agreement or any other related agreements, or the breach of this Agreement or any other related agreements, including any claim that this Agreement or any part of this Agreement or any related agreements is invalid, illegal, or otherwise voidable or void … will be sent to final and binding arbitration in the state of Maryland … in accordance with the Commercial Arbitration Rules of the American Arbitration Association [("AAA Rules")] …

*Id.* at 23.

The Agreement also provided that "[a]ll attachment, addenda and amendments" were "incorporated into and a part of th[e] Agreement." *Id.* at 22. Pursuant to Section 5(e) of the Franchise Agreement, the parties agreed to execute an Incentive Promissory Note ("Note") "at the time of signing th[e] Agreement" and "in substantially the form attached [t]herein." *Id.* at 5. The Note was revised on April 19, 2016. ECF No. 1-5. The Note states that the "Franchise Agreement, among other items, set forth certain conditions pursuant to which [Plaintiff] will

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

2

make a loan to [Defendants] pursuant to a promissory note in substantially similar form to [the Note]." *Id.* at 1. "Pursuant to the terms of the Franchise Agreement," Plaintiff agreed to loan Defendants $1,364,000.00 "for purposes related to the operation" of the Hotel. *Id.* The Note lists several events that constitute a default, including termination of the Franchise Agreement and the occurrence of any events that would provide Plaintiff with a right to terminate the Franchise Agreement. *Id.* at 3. The Note also authorized confession of judgment against Defendants and in favor of Plaintiff upon the occurrence of a default. *Id.* at 4.

Pursuant to a Guaranty dated January 14, 2016, Defendants BRSV, R. Patel, Newman, T. Patel, and Riddick-Seals agreed to guarantee TK's obligations under the Franchise Agreement and any related agreements. ECF No. 1-4 at 1. The Guaranty also contained an arbitration clause requiring that, except for Plaintiff's claims related to indemnification and Intellectual Property, "any controversy or claim founded upon or arising out of or relating to th[e] Guaranty, the Franchise Agreement, or any related Agreement, will be sent to final and binding arbitration … in accordance with the [AAA Rules] …" *Id.* at 2.

On October 5, 2017, Plaintiff sent a Notice of Default to Defendants due to Defendants' failure to meet the Hotel's construction milestones as required by the Franchise Agreement. ECF No. 1 ¶ 10. On December 6, 2017, Plaintiff sent a Notice of Failure to Cure Default to Defendants notifying them that they remained in default. *Id.* ¶ 11. The Notice advised Defendants that the Franchise Agreement would be terminated if Defendants failed to open the Hotel by December 31, 2017, the construction completion deadline required by the Franchise Agreement. *Id.* On January 3, 2018, Plaintiff sent a Notice of Termination to Defendants due to their failure to meet the Hotel construction and opening deadlines. *Id.* ¶ 12. On January 9, 2017, Defendant R. Patel sent a letter to Plaintiff requesting reconsideration of the termination. ECF

3

No. 11-2. He stated that the delays in construction were the fault of third-parties and Defendants had "exhibited a good-faith effort in this franchisee/franchisor relationship to develop this project," and he requested additional time to complete the construction. *Id.* at 1.

Instead of granting additional time, Plaintiff filed a Complaint in this Court for confessed judgment based on Defendants' default on the Note due to the termination of the Franchise Agreement. ECF No. 1. On November 9, 2019, the Court entered judgment by confession in favor of Plaintiff and against Defendants in the amount of $1,632,633.26, which consisted of the outstanding principal in the amount of $1,364,000.00, plus interest and costs. ECF No. 3. On March 1, 2019, Defendants filed a Motion to Vacate Judgment by Confession and Compel Arbitration. ECF No. 11. Plaintiff filed an opposition on March 25, 2019, ECF No. 13, and Defendants filed a reply on April 8, 2019, ECF No. 17. Defendants' counsel subsequently filed a Motion to Withdraw Appearance on August 23, 2019. ECF No. 18. No parties filed a response.

## II. MOTION TO VACATE JUDGMENT BY CONFESSION AND COMPEL ARBITRATION

Local Rule 108.1 sets forth the process for entry of, and relief from, a judgment by confession. *See* Loc. R. 108.1 (D. Md. 2016). Within thirty days of receipt of such judgment, a defendant may move to vacate, open, or modify the judgment "on the ground that the defendant has a meritorious defense to the cause of action." Loc. R. 108.1(d). "If the evidence presented establishes that there are substantial and sufficient grounds for an actual controversy as to the merits of the case, the Court shall order the judgment by confession vacated, . . . with leave to the defendant to file a pleading, and the case shall stand for trial." Loc. R. 108.1(e). Local Rule 108.1 is analogous to the procedural requirements applied in Maryland courts through Maryland Rule 2–611. *See Sager v. Hous. Comm'n of Anne Arundel Cty.*, 855 F. Supp. 2d 524, 553 n.37 (D. Md. 2012). Confessed judgments are disfavored in Maryland, and therefore "the Maryland

Court of Appeals 'has made clear that judgments by confession are to be freely stricken out on motion to let in defenses.'" *Id.* at 554 (quoting *Schlossberg v. Citizens Bank of Md.*, 341 Md. 650, 655 (1996)).

Defendants' primary argument with respect to the confessed judgment is that they did not default on the Note because their delays in fulfilling the Franchise Agreement's requirements were the fault of third-parties, so entry of the confessed judgment was improper. They contend that the Court must compel arbitration because the question of whether default occurred is subject to the Franchise Agreement's arbitration clause, and the issue of the arbitrability of that question is itself arbitrable. Defendants also contend that if the Court chooses not to compel arbitration, the confessed judgment must be vacated regardless because Defendants have meritorious defenses, including that they never breached the Franchise Agreement and were therefore not in default on the Note. In response, Plaintiff does not address whether the issue of arbitrability is itself arbitrable, but it does contend that the Note is a standalone document separate and apart from the Franchise Agreement and is therefore not subject to the Franchise Agreement's arbitration clause. Plaintiff contends further that the confessed judgment should not be vacated because Defendants have no other meritorious defenses to the execution or amount of the confessed judgment.

The Federal Arbitration Act ("FAA") requires a district court to stay judicial proceedings and compel arbitration of any issues covered by an arbitration agreement. 9 U.S.C. § 3. "[C]ourts must 'rigorously enforce' arbitration agreements according to their terms," *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on

issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds*, 470 U.S. at 218 (emphasis in original).

Generally, the arbitrability of disputes is a "gateway question" that should be decided by the court. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (quoting *AT&T Techs., Inc v. Commc'ns Workers*, 475 U.S. 643, 649 (1995)). "[W]here the agreements explicitly incorporate JAMS or AAA rules, such provisions constitute 'clear and unmistakable evidence' of intent to arbitrate arbitrability," *Collins v. Discover Fin. Servs.*, Case No. PX-17-3011, 2018 WL 6434503, at *2 (D. Md. Dec. 7, 2018), because those rules "expressly delegate arbitrability questions to the arbitrator," *Simply Wireless, Inc. v. T-Mobile US, Inc.*, 877 F.3d 522, 528 (4th Cir. 2017), *abrogated on other grounds by Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524 (2019); *see also id.* at 528 n.5 (listing cases).

Here, the Franchise Agreement specifically states that arbitration will be conducted "in accordance with the [AAA Rules]." ECF No. 1-5 at 23. This is "'clear and unmistakable evidence' of the intent to arbitrate arbitrability." *Collins*, 2018 WL 6434503, at *2; *see also Simply Wireless*, 877 F.3d at 528. Although the Franchise Agreement and the Note are physically separate documents, the Franchise Agreement specifically provides for the Note, *see* ECF No. 1-3 at 5, and the Note's terms are explicitly "[p]ursuant to the terms of the Franchise Agreement," *see* ECF No. 1-5 at 1. They are therefore sufficiently related to each other to create an arbitrability issue: specifically, whether the parties agreed to arbitrate the question of whether Defendants defaulted on the Note. *See Ford v. Antwerpen Motorcars Ltd.*, 443 Md. 470, 479

(2015) (stating that documents that are "part of a single transaction" should "be read and construed together as evidencing the intention of the parties"). Because the Franchise Agreement's arbitration clause commits questions of arbitrability to an arbitrator, the FAA mandates that this Court compel the parties to arbitrate that issue and any subsequent issues that the arbitrator deems to be within the scope of arbitration. The Court will therefore grant Defendants' request to vacate the judgment by confession and compel arbitration.

Moreover, although Defendants urge the Court to dismiss the Complaint, the Court instead will stay this case pending arbitration pursuant to 9 U.S.C. § 3.[2] The Court further orders the parties to engage in arbitration in accordance with the terms of their respective agreements pursuant to 9 U.S.C. § 4. *See Dillon v. BMO Harris Bank, N.A.*, 787 F.3d 707, 713 (4th Cir. 2015). The parties shall be directed to file status reports within fourteen days after the arbitration proceeding has concluded so that the Court can determine how best to proceed in this action based on the results of the arbitration.

### III. MOTION TO WITHDRAW APPEARANCE

Defendants' counsel have moved to withdraw their appearance "due to Defendants' non-communication and non-payment." ECF No. 18 at 1. Local Rule 101.2 sets forth the process by which appearance of counsel may be withdrawn. For individuals, an appearance may be withdrawn with leave of court if:

> (1) appearance of other counsel has been entered, or (2) withdrawing counsel files a certificate stating (a) the name and last known address of the client, and (b) that a written notice has been mailed to or otherwise served upon the client at least seven (7) days previously advising the client of counsel's proposed withdrawal and notifying the client either to have new counsel enter an appearance or to advise

---

[2] In its opposition, Plaintiff agreed, in the event that the Court determined it necessary for an arbitrator to decide whether the question of default was subject to arbitration, "to stay any further legal proceedings to collect on the collateral until the arbitration award has been issued so there is no prejudice to the Defendants." ECF No. 13 at 11.

the Clerk that the client will be proceeding without counsel. Loc. R. 101.2(a). For parties other than individuals, including corporations, an appearance may be withdrawn under the same circumstances, except that counsel must notify the client "that it must have new counsel enter an appearance or be subject to the dismissal of its claims and/or default judgment on claims against it." Loc. R. 101.2(b). Here, Defendants' counsel met the requirements of Local Rule 101.2(a) with respect to the individual Defendants and Local Rule 101.2(b) with respect to the corporate Defendants. The Court will therefore grant counsel's Motion to Withdraw Appearance.

The Court will note that the docket reflects that no new counsel has entered an appearance on behalf of any Defendant. With respect to the individual Defendants, the Court will assume that they will proceed *pro se* should the Court lift the stay on this case after the conclusion of arbitration. Under Local Rule 101.1(a), however, the corporate Defendants—TK and BRSV—must be represented by counsel. Thus, in the event that the Court lifts the stay on this case, TK and BRSV must have new counsel enter an appearance on their behalf or the Court may take any action that it deems appropriate, including entering a default against the corporate Defendants. *See* Loc. R. 101.2(b).

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Vacate Judgment by Confession and Compel Arbitration is granted and Defendants' counsel's Motion to Withdraw appearance is granted. This case is stayed pending further Order of this Court. A separate Order shall issue.

Date: <u>November   26, 2019</u>          <u>  /s/                         </u>
GEORGE J. HAZEL
United States District Judge